IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| CHIARA RYDER. | Civ. No. 6:25-cv-01637-AA |
| Plaintiff, | **OPINION & ORDER** |
| v. | |
| CITY OF SPRINGFIELD et al., | |
| Defendants. | |

AIKEN, District Judge.

Self-represented Plaintiff Chiara Ryder seeks leave to proceed *in forma pauperis* ("IFP") in this action. ECF No. 2. Plaintiff has also filed a Motion for Appointment of Pro Bono Counsel, ECF No. 3, and a Request for ADA Accommodations, ECF No. 4. For the reasons set forth below, Plaintiff's IFP application is GRANTED, but the Complaint, ECF No. 1, is DISMISSED without service on Defendants. Dismissal is with leave to amend unless specially noted below. Plaintiff's Motion for Appointment of Pro Bono Counsel is DENIED. Plaintiff's Request for ADA Accommodations is DENIED as to the appointment of counsel, but otherwise GRANTED on the terms set forth below.

## LEGAL STANDARD

Generally, all parties instituting any civil action in United States District Court must pay a statutory filing fee. 28 U.S.C. § 1914(a). However, the federal IFP

statute, 28 U.S.C. § 1915(a)(1), provides indigent litigants an opportunity for meaningful access to federal courts despite their inability to pay the costs and fees associated with that access. To authorize a litigant to proceed IFP, a court must make two determinations. First, a court must determine whether the litigant is unable to pay the costs of commencing the action. 28 U.S.C. § 1915(a)(1). Second, it must assess whether the action is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune to such relief. 28 U.S.C. § 1915(e)(2)(B).

With regard to the second of these determinations, district courts have the power under 28 U.S.C. § 1915(e)(2)(B) to screen complaints even before service of the complaint on the defendants and must dismiss a complaint if it fails to state a claim. Courts apply the same standard under 28 U.S.C. § 1915(e)(2)(B) as when addressing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012). To survive a motion to dismiss under the federal pleading standards, the complaint must include a short and plain statement of the claim and "contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted

unlawfully." *Id*. The court is not required to accept legal conclusions, unsupported by alleged facts, as true. *Id*.

*Pro se* pleadings are held to less stringent standards than pleadings by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). That is, the court should construe pleadings by *pro se* plaintiffs liberally and afford the plaintiffs the benefit of any doubt. *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988). Additionally, a *pro se* litigant is entitled to notice of the deficiencies in the complaint and the opportunity to amend, unless the complaint's deficiencies cannot be cured by amendment. *Id*.

## DISCUSSION

When assessing an IFP petition, the Court first must determine whether the plaintiff has made a sufficient showing of indigency. Here, the Court is satisfied with Plaintiff's showing of indigency, ECF No. 2, and the petition will be GRANTED.

Plaintiff was a guest at a hotel in Eugene, Oregon on November 24, 2023. Compl. ¶ 17. Staff and a guest of the hotel called 911 to report that Plaintiff had assaulted the hotel manager. Compl. Ex. 2. The police report indicates that the hotel manager asked to have Plaintiff trespassed and told to leave the hotel. Compl. Ex. 4, at 1. The police escorted Plaintiff to her room to gather her belongings. *Id*. Before leaving the hotel, Plaintiff said that "she was the actual victim of an assault." *Id*. Police went to the lobby and "asked the 15+ people if anyone would like to testify on behalf of [Plaintiff] or if anyone believed [Plaintiff] was the victim," but "[n]o one wished to vouch for [Plaintiff]." *Id*. Police determined Plaintiff's identity by running

her vehicle's license plates and provided the hotel desk with Plaintiff's name and "they placed [Plaintiff] on their 'Do not rent a room to list.'" *Id*. Plaintiff disputes this account.

Plaintiff alleges that the officers "presum[ed] Plaintiff's guilt and uncritically adopt[ed] the statements of others," while disregarding Plaintiff's version of events. Compl. ¶ 27. Plaintiff alleges that this was a violation of her due process and equal protection rights under the Fourteenth Amendment. *Id*.

Plaintiff alleges that police declined to review the surveillance footage. Compl. ¶ 29. Plaintiff alleges that, at some point, Defendant Sergeant Kyle Potter called her in response to her complaints, but "he minimized her concerns, stating she was simply upset 'because her side was not being taken.'" *Id*. at ¶ 30. Plaintiff alleges that this amounted to deliberate indifference. *Id*.

Plaintiff alleges that "these failures reflect not isolated lapses but systemic disregard" and seeks to bring a *Monell* claim against the City of Springfield, the Springfield Police Department, and the State of Oregon. Compl. ¶¶ 31. 40-45.

Plaintiff alleges that on February 16, 2024, Springfield police directed her to communicate directly with Defendant Officer Kirsten Cardwell, "despite her expressed discomfort," which Plaintiff contends "demonstrates hostility, retaliation, and obstruction of justice." Compl. ¶ 32.

Plaintiff complains that the Chief of Police for Springfield, Defendant Andrew Shearer, did not answer her calls, which Plaintiff contends constitutes "not mere administrative neglect, but a calculated abdication of duty," and that by not

answering her calls "Defendants denied [Plaintiff] meaningful access to accountability, compounding the deprivation of her rights to due process and equal protection under the Fourteenth Amendment." Compl. ¶ 37.

Plaintiff brings claims for (1) "unlawful seizure and intrusion" in violation of her Fourteenth Amendment rights; (2) "denial of due process and equal protection" in violation of her Fourteenth Amendment rights; (3) a claim municipal liability under *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978); (4) failure to provide reasonable accommodation in violation of the Title II of the Americans with Disabilities Act ("ADA"); (5) "Failure to Protect Constitutional Rights" against the State of Oregon; (6) violation of Oregon public records laws, ORS 192.420(1) *et seq.*; (7) "destruction or withholding of public records," which Plaintiff alleges violated her First and Fourteenth Amendment rights; and (8) "constructive eviction facilitated by state actors," which Plaintiff alleges violated her Fourteenth Amendment rights.

Except for Plaintiff's fourth claim, for ADA violations, Plaintiff's claims appear to be brought pursuant to 42 U.S.C. § 1983. Title 42 U.S.C. § 1983 "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights." *Conn v. Gabbert*, 526 U.S. 286, 290 (1999). To maintain a claim under § 1983, "a plaintiff must both (1) allege the deprivation of a right secured by the federal Constitution or statutory law, and (2) allege that the deprivation was committed by a person acting under color of state law." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).

## I. Plaintiff's claims against the State of Oregon

Only Plaintiff's third claim, for *Monell* liability, and her fifth claim, for "Failure to Protect Constitutional Rights (State of Oregon)," are clearly alleged against the State of Oregon. Section 1983 claims must be brought against "persons," which does not include states. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). As a result, Plaintiff has failed to state a claim against Oregon under § 1983.

In addition, states are generally immune from suit under the Eleventh Amendment and sovereign immunity unless Congress has abrogated their immunity, or the state has waived immunity by consenting to suit in express terms. *Whole Woman's Health v. Jackson*, 595 U.S. 30, 39 (2021); *Micomonaco v. State of Washington*, 45 F.3d 316, 319 (9th Cir. 1995). There has been no abrogation of sovereign immunity under § 1983. *Milstein v. Cooley*, 257 F.3d 1004, 1007 (9th Cir. 2001). Nor has there been any waiver of sovereign immunity by the State of Oregon with respect to Plaintiff's § 1983 claims.

Finally, Plaintiff's fifth claim seeks to vindicate Plaintiff's rights under Article I of the Oregon constitution. Claims brough under § 1983 must allege violations of *federal* rights. *Anderson*, 451 F.3d at 1067. Here, Plaintiff's fifth claim alleges a violation of her state constitutional rights, which are not redressable under § 1983.

The Court will therefore dismiss Plaintiff's claims against the State of Oregon. Because no amendment can remedy this defect, dismissal of the claims against the State of Oregon is with prejudice and without leave to amend.

## II.     Plaintiff has no constitutional right to a police investigation

The crux of several of Plaintiff's claims is the allegation that the police did not fully or completely investigate the complaint made against Plaintiff or Plaintiff's counter-complaint concerning Plaintiff's altercation with the hotel manager. *See, e.g.*, Compl. ¶¶ 48 ("Defendants deprived Plaintiff of her rights under the Fourteenth Amendment by disregarding exculpatory video evidence, refusing to take her statement, and uncritically accepting false narratives. Officers failed to conduct a fair and impartial inquiry, denying Plaintiff both procedural due process and equal protection under the law."); 49 (alleging that the City of Springfield failed to train officers on "due process and preservation of evidence,").

"There is no statutory or common law right, much less a constitutional right to an investigation." *Frisch v. City of Eugene*, Civ. No. 09-6126-TC, 2010 WL 686754, at *3 (D. Or. Feb. 24, 2010); *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) (noting that a "private citizen lacks a judicially cognizable interest in the prosecution or non-prosecution of another."); *Clark v. Milwaukie Police Dep't*, Case No. 3:22-cv-00662-SB, 2022 WL 4473487, at *5 (D. Or. Sept. 15, 2022) (a plaintiff "does not have a constitutionally protected right to have the police investigate his report in a particular way, to police protection, or to have the police arrest an alleged assailant."); *Gini v. Las Vegas Metro. Police Dep't*, 40 F.3d 1041, 1045 (9th Cir. 1994) ("The police have no affirmative obligation to investigate a crime in a particular way or to protect one citizen from another even when one citizen deprives the other of liberty or

property."); *Powers v. Layron*, Case No. 21-cv-06382-AGT, 2022 WL 3579887, at *2 (N.D. Cal. Aug. 19, 2022) ("[T]here is no constitutional right to an accurate or favorable" police report). Plaintiff's second claim for relief is therefore dismissed.

### III. Plaintiff has no right to a criminal investigation.

Among the forms of relief requested by Plaintiff is a referral of this matter for criminal prosecution. Compl. at 30. It is well settled that private citizens lack a judicially cognizable interest in the prosecution or non-prosecution of another. *Leeke v. Timmerman*, 454 U.S. 83, 86-87 (1981). As such, a plaintiff cannot ask the court to refer the matter to prosecuting authorities. *Ryan v. Lopez*, Civil No. 6:12-cv-01467-PA, 2014 WL 2201076, at *3 (D. Or. May 23, 2014).

### IV. Plaintiff's ADA claim

Plaintiff's ADA claim alleges that, "[d]espite clear indications of emotional distress, officers neither inquired into her need for accommodation nor adjusted their interactions," which Plaintiff alleges is a violation of Title II of the ADA, "which requires public entities, including law enforcement, to accommodate individuals with disabilities." Compl. ¶ 50.

Under Title II of the ADA, "no qualified individual with a disability shall, by reasons of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The Ninth Circuit has held that "a Title II claim may arise where police fail to reasonably accommodate the plaintiff's disability in the course of an investigation or arrest, causing the plaintiff

to suffer greater injury or indignity in that process than other arrestees." *Mayfield v. City of Mesa*, 131 F.4th 1100, 1109 (9th Cir. 2025) (internal quotation marks and citation omitted, alterations normalized). "To prove that a public program or service violated Title II of the ADA, a plaintiff must show that: (1) she is a qualified individual with a disability; (2) she was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of her disability." *Id.* (internal quotation marks and citation omitted, alterations normalized). To recover monetary damages under Title II of the ADA, a plaintiff must establish intentional discrimination on the part of the state officials. *Ferguson v. City of Phoenix*, 157 F.3d 668, 674 (9th Cir. 1998).

Here, Plaintiff alleges that she has documented disabilities but does not allege that there was any communication of those disabilities to the officers. Plaintiff alleges that she was "visibly disheveled and in heightened anxiety" and requested "15-20 minutes to compose herself." Compl. ¶ 25. Plaintiff alleges that Officer Cardwell "insisted that she leave immediately." *Id.* However, a person might be visibly disheveled, anxious, or in emotional distress without having a disability, particularly when interacting with police. There is no allegation that any Defendant was aware of Plaintiff's disability at the time of her removal from the hotel and, consequently, no allegation that the alleged discrimination was "by reason of" her disability.

Additionally, to the extent that this claim is brought against the individual Defendants, it must fail because "individuals who do not otherwise meet the statutory definition of 'employer' cannot be liable under the ADA." *Hardwick v. Curtis Trailers, Inc.*, 896 F. Supp. 1037, 1039 (D. Or. 1995); *see also Bruins v. Whitman*, Case No. 19-cv-01278-BAS-NLS, 2019 WL 3288922, at *4 (S.D. Cal. July 22, 2019) ("Moreover, Plaintiff may not pursue an ADA claim against any of the individually named Defendants because there is no individual liability under Title II . . . The ADA's definition of 'public entity' does not include individuals."); *Allen v. Diaz*, Case No.: 20-CV-1389 JLS (MDD), 2020 WL 6544662, at *6 (S.D. Cal. Nov. 6, 2020) ("Plaintiff may not pursue an ADA claim against the individual Defendants in their individual capacities."); *Poulson v. Wheeler*, Case No. 3:20-cv-01852-AC, 2020 WL 7348027, at *5 (D. Or. Nov. 13, 2020) (holding same). Similarly, Plaintiff may not attempt to bring an action under § 1983 against a state official in his or her individual capacity to vindicate rights created by Title II of the ADA. *Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002).

The Court concludes that Plaintiff has failed to state a claim under the ADA and the claim is dismissed. This claim is dismissed without leave to amend as to the individual Defendants.

### V.   Plaintiff's *Monell* claim

Plaintiff seeks to bring a *Monell* claim against the City of Springfield for its "customs and practices of failing to adequately train, supervise, and discipline officers

regarding lawful use of force, due process, and preservation of evidence." Compl. ¶ 49.

"[L]ocal governmental unit[s] or municipalities can be sued as a 'person' under § 1983." *Hervey v. Estes*, 65 F.3d 784, 791 (9th Cir. 1995). To prevail on a *Monell* claim under § 1983, a plaintiff must demonstrate that a municipal custom or policy caused the violation of a constitutional right. *Monell*, 436 at 690. To establish *Monell* liability, a plaintiff must demonstrate that: (1) the plaintiff possessed a constitutional right of which she was deprived; (2) that the municipality has a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) that the policy is the moving force behind the constitutional violation. *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out police." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). And if no constitutional violation occurred, a municipal liability claim necessarily fails. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).

However, "[c]ourts within this district have consistently dismissed federal and state law claims against local law enforcement agencies because the plaintiffs should have filed against the city or county." *Pearson v. Clackamas Cnty.*, Case No. 3:24-cv-01017-SB, 2025 WL 1435060, at *3 (D. Or. May 19, 2015) (collecting cases). The Court concludes that the City of Springfield is the proper Defendant for Plaintiff's *Monell* claim and will therefore dismiss Plaintiff's *Monell* claim against the Springfield Police

Department because the police department is not a "person" for purposes of § 1983 and *Monell* liability. The State of Oregon, similarly, is not a local governmental entity but, as previously discussed, the State of Oregon is shielded from § 1983 claims by Eleventh Amendment immunity.

Plaintiff repeatedly alleges that "these violations stemmed from systemic deficiencies, not isolated acts." Compl. ¶ 49; *see also id.* at ¶ 40 ("The violations Plaintiff experienced on November 24, 2023, are not isolated incidents, but part of a broader pattern of misconduct by the Springfield Police Department ("SPD"). SPD has a history of using excessive force, suppressing complaints, denying accommodations to individuals with disabilities, and failing to investigate or disclose material evidence.") However, these are conclusory allegations and amount to a formulaic recitation of the elements of the claim. *See Dougherty*, 654 F.3d at 900-01 (affirming dismissal of a *Monell* claim where the claim "lack[ed] any factual allegations that would separate them from the formulaic recitation of the elements," (internal quotation marks and citation omitted)); *Pearson*, 2025 WL 1435060 at *11 (dismissing a *Monell* claim where the plaintiff "fail[ed] to allege facts supporting the existence of a policy or pervasive practice," and noting that neither "speculative allegations" or the "Plaintiff's own experience" were sufficient to show the existence of policy or custom. (internal quotation marks and citation omitted)).

Here, Plaintiff has not alleged sufficient facts to support the existence of a policy or practice that was the moving force behind the alleged violation of her rights

beyond her own experiences with the Springfield police. Plaintiff's *Monell* claim is therefore dismissed.

### VI. Plaintiff's Fourth Amendment claim

Plaintiff alleges that the Defendant police officer "intentionally gripped Plaintiff's arm," which Plaintiff claims constituted an unreasonable seizure. Compl. ¶ 47. From this and from other allegations, the Court infers that Plaintiff intends to bring a claim for excessive force. *See* Compl. ¶ 49 (alleging, as part of the *Monell* claim, that the City of Springfield fails to train its officers "regarding lawful use of force").

It is a "fundamental premise that the use of force to effect an arrest is subject to the Fourth Amendment's prohibition on unreasonable seizures." *Chew v. Gates*, 27 F.3d 1432, 1440 (9th Cir. 1994) (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)). "There is . . . no mechanical test for determining whether a particular application of force was unreasonable; the reasonableness of a seizure must instead be assessed by carefully considering the objective facts and circumstances that confronted the arresting officer or officers." *Id*. "In determining reasonableness, the nature and quality of the intrusion on the individual's Fourth Amendment interests' must be balanced against the countervailing government interests at stake." *Id*. (internal quotation marks omitted). "In weighing the governmental interests involved the following should be taken into account: (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest

by flight." *Id.* Importantly, "not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Graham*, 490 U.S. at 396 (internal quotation marks and citation omitted).

Here, the complained-of seizure was that one of the police officers took hold of Plaintiff's arm. Of note, Plaintiff does not allege that she was injured by the officer's use of force. Nor does Plaintiff allege that she was arrested, merely that she was removed from the hotel premises. Courts have held that "the constitution does not protect against *de minimis* uses of force." *Bishop v. San Quentin State Prison Work Place*, No. C 01-3411 SI (PR), 2002 WL 1767416, at *4 (N.D. Cal. July 29, 2002); *see also Bratcher v. Polk Cnty.*, Case No. 3:20-cv-02056-SB, 2022 WL 17184419, at *9 (D. Or. Sept. 1, 2022) (finding that a claim for excessive force based on a police officer firmly gripping an arrestee's arm on the way to the patrol car was "a *de minimis* use of force" and "insufficient to support an excessive force claim under the circumstances,"); *Parker v. City of Los Angeles*, Case No. 2:15-cv-04670-SVW-JEM, 2016 WL 9153765, at *7 (C.D. Cal. June 22, 2016) ("Courts have held that a *de minimis* use of force is insufficient to support a claim of excessive force.").

Here, the alleged use of force is limited to the officer gripping Plaintiff's arm, unaccompanied by any injury caused by the officer's use of force, or even by an arrest. This is a *de minimis* use of force and is insufficient to sustain a claim for excessive force under the Fourth Amendment. Plaintiff's first claim for relief is dismissed.

### VII. Plaintiff's public records claims

Plaintiff's sixth claim alleges that the City of Springfield and the Springfield Police Department "repeatedly denied Plaintiff's lawful public records requests." Compl. ¶ 52. The coversheet for Plaintiff's Complaint cites federal question as the basis for jurisdiction and lists only §1983 and the ADA as the basis for her claims. From this, the Court infers that the sixth claim is intended as one brought under § 1983. However, Plaintiff alleges that the failure was a violation of ORS 192.420, which is a state statute and, as previously discussed, claims brought under § 1983 must seek to vindicate *federal* rights.

Plaintiff's seventh claim alleges that "relevant public records were destroyed, altered, or unlawfully withheld in violation of Oregon law and her federal constitutional rights to access information concerning state action." Compl. ¶ 53. "Generally, access to public records pursuant to state or local law is not a right guaranteed by federal law." *Steskal v. Benton Cnty.*, No. Civ. 04-6158-TC, 2004 WL 2997461, at *2 (D. Or. Dec. 27, 2004). "The only area where the Supreme Court has found a constitutional right of access to public information is in area of criminal trials and criminal proceedings." *Id.* (citing *Brady v. Maryland*, 373 U.S. 83 (1963)). Plaintiff was not criminally charged for the incident in hotel and her Complaint does not establish any federal constitutional right to the public records at issue.

The Court concludes that Plaintiff's sixth and seventh claims for relief are dismissed for failure to state a claim.

### VIII. Plaintiff's constructive eviction claim

Plaintiff alleges that Defendants violated her Fourteenth Amendment due process rights by removing her from the hotel at the request of hotel management and by giving her name to the hotel management, who used it to trespass her from the premises and place her on a "do not rent" list. Compl. ¶ 55. Plaintiff alleges that she was deprived of the benefit of judicial evictions procedures. *Id.* at ¶¶ 56-57.

The hotel guests are not tenants. *See Rowden v. Hogan Woods, LLC*, 306 Or. App. 658, 677 (2020) (holding that "the ordinary arrangement between hotels and guests is explicitly *not* a landlord-tenant relationship." (emphasis in original)); *see also* ORS 90.110(4) (providing that "Transient occupancy in a hotel or motel" is not governed by Oregon's residential landlord and tenant statutes); ORS 90.100(51) (excluding "guests" and "temporary occupants" from the definition of tenant); ORS 90.100(53) (defining "Transient occupancy" as including occupancy being charged on a daily basis and the lodging operator providing maid and linen service as part of the regularly charged cost occupancy). Plaintiff has not alleged facts showing that she was entitled to a judicial eviction or any other procedure before she was removed from the hotel at the request of management. The Court concludes that Plaintiff lacked a property interest in her continued status as a guest of the hotel and that failure is fatal to her due process claim.

Similarly, Plaintiff complains that the hotel manager "unilaterally barred her from the premises," and she was given no opportunity to "seek recourse through hotel management or corporate channels." Compl. ¶¶ 55-56. Plaintiff's dissatisfaction

with being trespassed from the hotels and placed on the hotel's "do not rent" list are a matter that lies between Plaintiff and the hotel, which is not a party to this action. For purposes of the Complaint, Plaintiff has failed to allege a liberty intertest connected to her ability to rent rooms from the hotel.

The Court concludes that Plaintiff has failed to state a claim for a violation of her due process rights based on her removal from the hotel. As a result, Plaintiff's eighth claim is dismissed.

### IX. Motion for Appointment of Counsel

Plaintiff has moved for appointment of counsel. ECF No. 3. A district court has discretion to request volunteer counsel for indigent plaintiffs in exceptional circumstances. *See Wood v. Housewright*, 900 F.2d 1332, 1335 (9th Cir. 1990). "A finding of exceptional circumstances . . . requires at least an evaluation of likelihood of the plaintiff's success on the merits and plaintiff's ability to articulate his claims in light of the complexity of the legal issues involved." *Agyeman v. Corr. Corp. of Am.*, 390 F.3d 1101, 1103 (9th Cir. 2004) (internal quotation marks and citation omitted). For the reasons discussed above, the Court has concluded that Plaintiff has failed to state a claim and dismissed the Complaint. The Court does not find exceptional circumstances warranting the appointment of counsel. The motion is therefore denied.

### X. Request for ADA Accommodations

Plaintiff has filed a Request for ADA Accommodations. ECF No. 4. The accommodations Plaintiff seeks are (1) the appointment of pro bono counsel; (2)

extended filing deadlines; (3) permission to use plain language and informal formats where necessary; (4) permission to attend hearings via video or written submission where possible; and (5) permission to file documents via email or in-person clerk filings when Plaintiff is unable to navigate CM/ECF.

The request for appointment of pro bono counsel is denied for the reasons discussed in the previous section. Plaintiff's request for extended filing deadlines will be addressed on a case-by-case basis and the Court will entertain any reasonable request for an extension of deadlines. With respect to Plaintiff's request to use plain language, Plaintiff is self-represented and not an attorney and so there is no expectation that Plaintiff's filings will be written in a lawyerly style. Plain language is not only permitted but encouraged. There are no hearings presently scheduled in this case, but should they be necessary, the Court will accommodate Plaintiff's request by allowing her to appear by telephone or videoconference unless the circumstances require an in-person appearance. Finally, Plaintiff is free to file her documents in-person with the court clerks should she be unable to navigate the CM/ECF filing system.

In sum, Plaintiff's request for ADA accommodations is denied as to the appointment of counsel but is otherwise granted on the terms set forth above.

## CONCLUSION

For the reasons set forth above, Plaintiff's Application for Leave to Proceed IFP, ECF No. 2, is GRANTED, but the Complaint, ECF No. 1, is DISMISSED without service on Defendants. Dismissal is with leave to amend unless specifically noted

above.  Plaintiff's Motion for Appointment of Counsel, ECF No. 3, is DENIED. Plaintiff's Request for ADA Accommodations, ECF No. 4, is GRANTED in part and DENIED in part as set forth above.

Plaintiff shall have thirty (30) days from the date of this Order in which to file an amended complaint.  Plaintiff is advised that she may not replead any claim that has been dismissed with prejudice or without leave to amend.  Plaintiff is further advised that failure to file an amended complaint within the allotted time will result in a judgment of dismissal without further notice.

It is so ORDERED and DATED this ___22nd___ day of September 2025.

/s/Ann Aiken
ANN AIKEN
United States District Judge